# PETRONA FUENTES

*v.*

# NEW YORK AND PORTO RICO STEAMSHIP COMPANY.

---

San Juan, Law, No. 904.

1. The anchorage, by a fisherman, of his rowboat in a used channel, on a dark night, without such a light as is required by statute, and with no sufficient appliances for safety in emergency, close to a harbor buoy which is the turning point for vessels coming from the piers to leave the harbor, constitutes such negligence as will prevent a recovery of damages for his drowning in consequence of a collision between his boat and a steamship.

2. Where a rowboat is wrongly anchored in a used channel in a harbor, a steamer colliding therewith can be held at fault only in case wilful negligence is shown on the part of those operating her.

Opinion filed November 22, 1912.

---

*Mr. Hugh R. Francis* for plaintiff.

*Mr. N. B. K. Pettingill* for defendant.

NOTE.—The authorities on the relative duties of steamers and small craft propelled by oars, on rivers and in narrow channels, are collated in a note in 5 L.R.A.(N.S.) 303.

Fuentes v. New York & Porto Rico Steamship Co.

CHARLTON, Judge, delivered the following opinion:

At 2 A. M. on the 17th day of May, 1912, the plaintiff's decedent, being her son, aged eighteen years, with two companions, was fishing from a rowboat which was 8 to 10 feet long, which was anchored close to buoy No. 9 in the harbor of San Juan, Porto Rico, the stern of the boat being some 8 or 9 feet distant from said buoy. The night was very dark, but windless and without rain. At about that hour the steamship Vasco, belonging to the New York & Porto Rico Steamship Company, was coming from her berth at the marina at San Juan on her way out of the harbor. Buoy No. 9 is situated off the "puntilla," or neck of land which projects from the mainland into the bay of San Juan in a southwest direction, and said buoy is the turning point for vessels coming from the piers to leave the harbor, the course changing at that point through an angle of about 40 degrees to the north, and it being the custom of vessels so leaving the harbor to turn close to buoy No. 9 before picking up the course of buoys leading to the north of the harbor to the north. As the Vasco approached buoy No. 9, and when she was within 30 or 40 meters of said buoy, one of the occupants of the boat seated in the stern testified that he first observed the Vasco approaching. Whereupon the boy seated in the bow loosed a lighted lantern which was attached to the bow, and waved it to attract the attention of the steamer, after having endeavored to raise the anchor, which, however, was so caught as not to be loosened, and the occupants being unable to find a knife which they had aboard, to cut the mooring line, because if the boat had been free it would either have drifted or could easily have been propelled out of the line of the approaching steamer.

Fuentes v. New York & Porto Rico Steamship Co.

The surviving occupants of the boat testified that they endeavored to attract the attention of persons on the steamer by loud cries; but these being unheeded, and the steamer continuing on her course, the occupants of the rowboat jumped overboard, and the plaintiff's decedent was never afterwards seen, although one of the others saved the remaining boy and placed him aboard the boat, which was partially filled with water, but not structurally damaged by the impact between it and the steamship Vasco.

It was in evidence that fishing boats very commonly anchored close to buoy No. 9, both in the day and night time, as that was a locality where fish congregated, and the survivors of the accident testified that they had frequently fished in that position, both by day and by night.

This action was brought against the defendant company by the plaintiff as the mother of the deceased, praying damages for the loss of his services and support.

After the accident the Vasco proceeded on her course without stopping or checking her speed.

At the close of plaintiff's testimony, the defendant moved the court to direct a verdict in its favor, assigning as reasons in support of said motion: (1) That the boat contained no proper light; (2) that the boat was anchored in the channel, and therefore was improperly anchored, and the fact of such anchorage constituted an obstruction of said channel; (3) that the boat did not contain proper appliances for its safety and proper operation; (4) that the boat being anchored improperly in a channel at night, the steamer could be held only in case wilful negligence could be shown on the part of those operating her; (5) for the reason that no negligence of the defendant had been affirmatively shown.

In support of the foregoing propositions, counsel for defendant cited the statement contained in Spencer on Marine Collisions, § 160, to the effect that rowboats are not "vessels" within the meaning of sailing rules prescribed by statute, and a steamer is not bound to slacken its speed or change its course on observing a rowboat ahead under such condition that the rowboat can easily avoid the other. Rowboats, being of such a character as to admit of easy and speedy movement, are required to keep out of the way of larger and more cumbersome vessels, whose movements are laborious and less under command. A steamer may assume, until the contrary appears, that the rowboat is properly manned and equipped, and will take the usual precautions to avoid danger; and where it appears that collision ensues as a result of ignorance and mismanagement of the rowboat, no liability follows on the part of the colliding vessel. And, to the same effect, cited the case of The Missisquoi, 8 Ben. 6, Fed. Cas. No. 9,649, and Philadelphia & R. R. Co. v. Adams, 89 Pa. 31, 33 Am. Rep. 721.

As to the point that anchoring in a usual channel at night, without extra precaution, constitutes negligence *per se* upon the party committing such act, counsel for defendant cited the following cases: The Jeremiah Godfrey, 17 Fed. 738; The B. K. Washburn, 19 Fed. 788; Spencer v. The Fristad, 51 Fed. 766; and Strout v. Foster, 1 How. 89, 11 L. ed. 58.

It was contended by counsel for plaintiff that the evidence shows that persons in charge of or upon the steamship Vasco must have heard the cries of the occupants of the boat before the collision, and that therefore, under the provisions of the act of Congress approved September 4, 1890 (26 Stat. at L. 425, chap. 875, U. S. Comp. Stat. 1901, p. 2902), the Vasco should

Fuentes v. New York & Porto Rico Steamship Co.

have stood by and rendered aid after the collision, and her failure to do so, under said statute, must be held in law to have been the cause of said accident, unless proof to the contrary is shown. To this it is to be replied that the damage here caused was for the death of plaintiff's decedent as a consequence of the collision, but the testimony of his companions shows that, even if the Vasco had stood by and rendered aid, it would have been ineffectual in so far as plaintiff's decedent was concerned, because both witnesses testified that he was never seen in the water, or elsewhere, after the accident occurred.

Counsel for plaintiff also contended that the channel at that point being about one fifth of a mile wide, it was the duty of the Vasco to keep away from buoy No. 9 on making the turn, and that the fact that it passed so close to buoy No. 9, when there was plenty of room outside, of itself constitutes negligence on the part of the defendant company through its agents; and that the anchorage of a boat in a channel is not *ipso facto* an improper anchorage,—citing in support of this contention the case of The Worthington, 19 Fed. 836, and the case of The Scotia, 10 Fed. 684, both of which cases were cases arising from collisions between moving and anchored boats in the Detroit river, where conditions are unusual and peculiar, and where it is customary for boats so to anchor in the channel. And that where room is left to pass, it is the duty of the moving boat to take every precaution not to touch, citing Rebstock v. Gilchrist Transp. Co. 132 Fed. 174.

He also contended that the rules of navigation applied to vessels of all kinds, including rowboats "propelled by the human arm."

It is to be observed that the same duty does not apply to

Fuentes v. New York & Porto Rico Steamship Co.

small boats in harbors as would apply to masters of vessels·at sea, in relation to collision and to precaution, ·particularly·at night, and particularly in a channel where frequent observation must have informed the occupants of the boat that vessels passing in and out pass very close to buoy No. 9.

It was in evidence that the light upon this rowboat consisted of a lantern fastened on the top of the extreme bow of the boat, of an ordinary character, and with the wick turned as is usual; but, although under the navigation laws of the United States, ¶ 382, it is provided that for a rowboat in a harbor one white light visible all around and visible at a distance of one mile must be provided, the only evidence as to the distance at which this light could be seen was given by plaintiff's witness Martinez, who testified that it could be seen at a distance of 60 feet, being partly obstructed by the buoy.

The law as to stoppage is claimed to be a penalty, and not applicable in civil cases for damages; but to the contrary of this contention is cited the case of The Robert Graham Dun, 17 C. C. A. 90, 33 U. S. App. 297, 70 Fed. 270, being a collision between two sailing vessels off Cape Cod, in which there was failure to stand by, and in which three lives were lost. That action was brought under what is known as the Harter act, approved September 4, 1890, but the circumstances were so different from those under consideration here, and applied to an entirely different class of vessels at sea, and not in a channel, that the holding there is not influential in the conclusion which I have reached.

This has been done with difficulty; as the able and exhaustive arguments of counsel on both sides left my mind in very considerable doubt, but I have reached the conclusion that the mo-

tion to direct a verdict must be sustained for the reason that anchorage by plaintiff's decedent of his boat in the position in which it was, without such a light as required by statute, in a used channel, on a dark night, with no sufficient appliances for safety in emergency, constitutes such negligence as will prevent a recovery here. The steamer could have been held at fault as against a boat anchored wrongly, only in case wilful negligence had been shown; and here no negligence on the part of defendant or its agents has been affirmatively shown.

The jury will therefore be directed to return a verdict in favor of the defendant, and an exception is granted to the plaintiff.

It is admitted by counsel that, after plaintiff announced his case to have been closed, he offered to prove by the testimony of the captain and members of the crew of the steamship Vasco that, immediately succeeding the collision in question in this case, he saw two men in the water on the starboard side of the steamer, and the boat on the port side of the steamer, and that just previous to the accident the captain and members of the crew of the steamship Vasco heard cries.

This offer on the part of plaintiff is denied, because it is not apparent that it would be in furtherance of justice, as I have already held that the basis of this action being the death of plaintiff's decedent, and the testimony of his companions showing that his body never appeared after the accident and has never since been seen, it would have answered no useful purpose, so far as the rights here involved are concerned, to have stopped the Vasco after the accident.