## Pennsylvania Railroad Co. versus Ackerman.

| 74 | 265 |
|---|---|
| 127 | 306 |

| 74 | 265 |
|---|---|
| 204 | 500 |
| 74 | 265 |
| 24 SC | 620 |
| 74 | 265 |
| 36 SC | 290 |

1. A traveller, before sunrise on a foggy and dark morning, approached a railroad crossing in a city, stopped about ten steps from it, and looked and listened without getting out of his wagon and going on the railroad.  The view of the track was somewhat obstructed by cars standing on a siding ; the train came more rapidly than the city ordinances allowed, and there was snow on the track ; there was evidence that the bell was not sounded : the wagon was struck and a horse killed.   Held, that under the circumstances the question of contributory negligence was for the jury.

2. The court charged: "If under the circumstances an ordinarily prudent and cautious man would have got out of his wagon and approached the track at the head of the horses until he was in a position where he could look along the track far enough to see that he was in no danger from an approaching train, it was the duty of the plaintiff's driver to do so, and if his neglect to do so contributed to the injury complained of, plaintiff cannot recover."   Held to be correct.

3. Pennsylvania Railroad Co. v. Beale, 23 P. F. Smith 504, distinguished.

October 15th 1873.   Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of Allegheny county : Of October and November Term 1873, No. 103.

This was an action on the case, brought February 3d 1871, by Christian Ackerman against The Pennsylvania Railroad Company, lessee of the West Pennsylvania Railroad Company.

The cause of action was the striking of the horses and wagon of the plaintiff by defendants' locomotive, killing one and injuring the other, as they were crossing the railroad track on Pine street in Allegheny City.   At the crossing of the street there was a tannery and a siding, on which, at the time of the accident, there were one or more box-cars standing.

Leonard Brunt testified: "On 20th of December 1871, I was in employ of the plaintiff, driving team for him.   On the morning of that day, about half-past six o'clock, I was driving on Pine

[Pennsylvania Railroad Co. *v.* Ackerman.]

street, and wanted to cross the railroad to go to the blacksmith-shop. When I came to the tannery I stopped. I was driving on Pine street, going towards the railroad. When I came to the tannery I halted—stopped my team and looked and listened for the train, and I could not see anything or hear anything. The train approached and threw me out of the wagon. That is all that I can tell. It was a dark, smoky morning. I didn't hear or see anything before I drove my horses on the crossing. I couldn't look up all the way on account of coal-cars standing there. There was one coal-car and the rest of the cars were box-cars; don't know how many box-cars—three or four; can't say how many; the cars were pretty near the tannery; the coal-car was standing partly on the crossing, and the box-cars were next to the coal-car; I came into Pine street out of the alley, about a square from the railroad-crossing; I was driving an open wagon—coal-wagon; I was sitting towards the front of the wagon; sitting on the seat; my lines were short; I didn't drive fast; didn't come along very lively; the horses were walking, not trotting; it was about ten steps from the crossing that I stopped to look and listen for the cars; about ten steps from the horses' heads to the crossing; I stopped almost a minute or two, not long; I could have looked over the coal-car, but couldn't see over the box-cars; I couldn't see far on account of the smoky state of the atmosphere; there is a lamp-post at the crossing, on the left-hand side of the crossing, as you go up on the side of the railroad next the crossing; can't say how far I was from the crossing when I fell; I did not attempt to jump out of the wagon; was on the wagon when the train struck me; I was in the wagon, pretty near the horses, when I was struck; was sitting; the flat car was about half over the crossing; I mean about half of the car was over the crossing; there was more than one car on the crossing; I heard no bell; there was snow on the track; I could not hear; had been in the habit of crossing there day and night."

There was other evidence of the occurrences at the time of the accident. A number of witnesses testified that they were in circumstances to hear the bell, if it had been rung, and that they did not hear it. They testified also that the morning was foggy and dark, and that there was snow on the track. There was evidence that the train was moving more rapidly than the ordinances of the city allowed.

The evidence for the defendants was that the bell had been sounded continuously from the time the train had left a former station. They gave evidence also that the engineer and fireman had used due care; and generally in answer to the plaintiff's case.

The defendants submitted a number of points. The third point was :—

If the jury believe that the driver, by reason of the cars

[Pennsylvania Railroad Co. v. Ackerman.]

standing on the siding, and in the position described by the witnesses, could not see the approach of the train to the crossing, and that the position of the cars rendered passing over the main track more. dangerous than if they had not been there, then he was in law bound to use more care and caution; and if, by getting out of his wagon and going on the crossing, he could have discovered the approach of the train, and thereby avoided the collision, and did not do so, then the. plaintiff cannot recover.

The court (Sterrett, P. J.) answered:—

"The first branch of this proposition is affirmed; as to the latter part of it, we submit to the jury to say whether, under the circumstances, a man of ordinary prudence, and caution would not have got out of his wagon and approached the track at the head of the horses, until he was in a position where he could look along the track far enough to see that he was in no danger from an approaching train. If, under the circumstances, an ordinarily prudent and cautious man would have done so, it was the duty of the plaintiff's driver to do so, and if his neglect to do so contributed to the injury complained of, the plaintiff cannot recover.

"As we have said, it is the duty of a party approaching a railroad crossing to pause, look and listen, in order to satisfy himself that there is no danger from an approaching train.

"The point at which he should pause and look and listen will depend on circumstances. If the view is unobstructed, he may exercise these precautions without being very close to the track. If the view from his approach is obstructed, he should place himself in a position where he could satisfy himself that there was no danger.

"This is doing nothing more than an ordinarily prudent and cautious man would do. By this rule it must be determined whether the driver did his duty or not."

The verdict was for the plaintiff for $580.

On the removal of the record to the Supreme Court by the defendants, they assigned the answer to their third point, for error.

*J. H. Hampton* (with whom was *J. Dalzell*), for plaintiffs in error.—The driver should have got out of his wagon and looked and listened: North Pennsylvania Railroad Co. v. Heileman, 13 Wright 60; Pennsylvania Railroad Co. v. Beale, 23 P. F. Smith 504.

*Gazzam & Cochran*, for defendant in error.—The driver was not bound to go on the track: Pittsburg, Fort Wayne and Chicago Railroad Co. v. Evans, 3 P. F. Smith 250. When there is evidence of negligence in both parties, the question is for the jury: Pennsylvania Railroad Co. v. McTighe, 10 Wright 319; North Pennsylvania Railroad Co. v. Robinson, 8 Id. 175; Lackawanna

and Bloomsburg Railroad Co. v. Chenewith, 2 P. F. Smith 382; Pennsylvania Railroad Co. v. Henderson, 7 Wright 449. Each case is to be decided on its own merits. There can be no inflexible rule for all cases: Philadelphia and Reading Railroad Co. v. Spearin, 11 Wright 300.

The opinion of the court was delivered, October 20th 1873, by

SHARSWOOD, J.—There is no subject which, in my judgment, more loudly calls for legislative regulation than that of railroad crossings at grade. We are far behind Great Britain and the countries on the Continent of Europe in the precautions required to prevent those fearful accidents to passenger trains from collisions which have produced the loss of so many valuable lives, accompanied with such horrible suffering from mangled limbs and bodies. The judicial decisions of the courts, and of this court in particular, have gone as far as they could in requiring the utmost care on the part of the servants of the railroad companies, to give notice of the approach of trains, and the like care and caution to travellers in attempting to cross. More particularly is this true either in approaching or passing through populous towns or cities.

If the evidence given by the plaintiff below was to be believed, the railroad company in the case before us was guilty of very gross negligence. It was a dark, foggy morning, with snow on the track, which deadened the usual rumbling sound of a moving train. They were going, even according to their own account, at a much greater speed than was allowed by the ordinance of the city of Allegheny, through whose streets they were passing. They sounded no whistle, and if they were ringing a bell, it could only have been at intervals, not continuously. Too many entirely indifferent witnesses testify that they did not hear a bell, to lead the mind to any other conclusion. This particular crossing was at the time so obstructed by cars on a siding that the view of the track could not be had until the traveller was directly upon it. One witness testified that a person could not see up the track without getting out on the middle of it. This resulted, as he said, from a tannery, which stood out in the way, and from the manner in which the cars stood on the siding, one car standing partly out on the street.

On the other hand, the driver of the wagon, the horses of which were killed, according to his testimony, did all he could in the way of precaution, without incurring imminent danger of his own life. He stopped within ten steps of the crossing and listened, but heard nothing. If he had got out and led his horses on the track, the result would have probably been the loss of his own life, as well as that of the horses. It is not to such a case that the opinion and decision in Pennsylvania Railroad Co. v. Beale, 23 P. F. Smith 504, applied. We adhere to that decision, that the fact that the

[Pennsylvania Railroad Co. v. Ackerman.]

track cannot be seen from the road is no reason why the traveller should not stop and listen, approach the track at a slow walk, and if he has reason to fear from his horses taking fright, get out of his wagon and lead them by the head until he comes to a point where he can be sure that it is safe to cross. It is negligence in a railroad company to have such a crossing so obstructed as this one appears to have been; but this does not dispense with the necessity of extreme precaution by the traveller, if he was acquainted with the nature of the locality. The same strict rule cannot be held to apply to a stranger to the country. Indeed one of the regulations which ought to be made by legislative authority, should be, that the usual notice on country roads, "Look out for the locomotive," should be at a point where the approaching train on the track can be seen in either direction; and as to streets in a city, there should be a flagman at every crossing. The point which was put by the defendants below to the learned judge, was too broad under the evidence of the case, and he would have been guilty of error if he had affirmed it without qualification. He left it to the jury to say whether the servant of the plaintiff had done all that a prudent and cautious man could do. If the view from his approach is obstructed, he should place himself in a position where he could satisfy himself that there was no danger. Whether he could have done this was a question of fact for the jury, and was properly left to them.                                     Judgment affirmed.