# LAKE SHORE & M. S. RY. CO. v. ALFRED FRANTZ.

ERROR TO THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued May 3, 1889—Decided June 28, 1889.

(a) A city street was crossed at right angles by the main tracks and sidings of the defendant company's railroad, the main tracks being north of two of the sidings. South of these tracks and sidings and separated from them about seven feet were the tracks and sidings of another railroad company. Safety-gates were maintained at the crossing, in obedience to a city ordinance.

(b) About 7 A. M. the plaintiff and a companion, occupying and driving a two-horse wagon, approached the crossing from the south, but before driving over they stopped, looked and listened. The safety-gates were raised and no watchman was present. The south sidings of defendant's line were occupied in both directions by box cars, which obstructed the view of the main track.

(c) While the two men were stopping and looking, a hand-car on one of defendant's main tracks passed eastward from behind the box cars, and they then drove across without again stopping to look and listen, and as they reached the main track they were struck by another hand-car passing rapidly on the same track in the same direction.

1. The foregoing facts appearing in the plaintiff's case, in his action for damages, it was proper that the question whether he was guilty of contributory negligence or not should be left to the jury, and it was not error to refuse to enter a judgment of compulsory nonsuit.

2. The duty to stop, look and listen is absolute and imperative, and the fact that the safety-gates were raised did not release the plaintiff from its observance; yet, on the other hand, it was some evidence of negligence on the part of the defendant, and as such was a proper subject of the comments made thereon to the jury.

3. The trial judge charged that the jury might consider the pain and suffering the plaintiff "has undergone, and may undergo in the future; " but the idea of compensation was fairly brought to their atten-

127   297
138   521

127   297
156   258

127   297
158   236

127   297
161   32

127         297
210       ²101

127         297
32 SC ¹ 28

127         297
36 SC ²291

127   297
f222  561
e222  562
f224  ²632

tion in the enumeration of the elements of the damages allowable, and, taken with its context, there was no substantial error in the instruction.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 414 January Term 1889, Sup. Ct.; court below, No. 121 May Term 1885, C. P.

On March 18, 1885, Albert Frantz brought case against the Lake Shore & Michigan Southern Railway Company, to recover damages for personal injuries alleged to have been caused by the negligence of defendant company's employees. Issue.

At the trial on September 21, 1888, the facts shown by the plaintiff's testimony were in substance as follows :

Parade street, in the city of Erie, runs north and south, and is crossed at right angles and at grade by the tracks of the defendant company, to wit : two main and three side tracks, running east and west. Immediately south of the last track of the defendant, are the tracks of the Philadelphia & Erie Railroad, two or three in number. There is a space of seven feet and two inches between the south track of the defendant company and the north track of the P. & E. Railroad.

Safety-gates were maintained at the street-crossing, and at this point the tracks of both railroads are straight for a long distance. There was also a city ordinance in force, enacted June 24, 1873, prohibiting the running of railroad trains through the city at a speed greater than six miles an hour, and requiring companies to maintain flagmen at crossings.

About 7 A. M., November 21, 1884, Albert Frantz was riding with one Decknor who was driving north on Parade street in a two horse wagon. The safety-gates were raised, and the watchman was absent. When they approached the tracks of the P. & E. R. Co., they stopped the wagon and looked up and down and listened, to discover if it was safe to proceed. Two of the defendant company's side tracks were south of its main track, and at this time both of them were occupied in both directions with box cars standing upon them, and one of the box cars, on the siding next the main track, extended over the west sidewalk and into the street. These box cars, it was claimed, obstructed the view of the road-bed to the west of the crossing. The occupants of the wagon

could see, however, that no train was approaching in that direction.

While the wagon was stopped and the plaintiff and his companion were looking and listening, a hand-car passed east on one of defendant's main tracks. Not seeing or hearing anything more, Decknor proceeded to drive across, the horses walking, and just as the team got upon defendant's south main track, another hand-car, also passing east, came rapidly and silently on, running at the rate of ten miles an hour, as was claimed, and dashed against the team. The horses jerked the wagon over the hand-car, whereby the driver was thrown out and the wagon upset. The team ran away, and the plaintiff was caught under the wagon box and dragged for some distance, receiving serious and permanent injuries.

The plaintiff having rested, the defendant moved that a judgment of compulsory nonsuit be entered.

By the court: I think this matter should go to the jury. The plaintiff himself testified that they stopped and looked and listened before going across the track, and the driver to the same thing, and that there were cars which obstructed the view until they got close to the track. The motion for a compulsory nonsuit is overruled; exception.[1]

The testimony on the part of the defendant was to the effect that there were eight employees upon the second hand-car, the foreman and seven assistants; they testified substantially that they were running at the rate of about five miles an hour, when just before they reached Parade street they saw the horses and wagon coming at a smart trot; that they immediately gave what warning they could by shouting to the plaintiff and his companion in the wagon, put on the brakes and did their utmost to check the speed of the car and to stop it, and that when the car struck the horses it was going very slowly, almost stopped.

The court, GUNNISON, P. J., charged the jury and answered the points presented:

The first question for you to decide is, was there negligence on the part of the railroad company or its employees? Because if there was not, the plaintiff is not entitled to recover. His right to recover depends on the accident having been occa-

sioned by the negligence of the railroad company or its em-
ployees.

It has been shown in evidence to you that there is an ordi-
nance of the city of Erie which requires the railroad companies,
at this street, to erect and maintain safety-gates. These gates
should be operated and watched at all times when there is
much travel across the tracks on the street. At such times, a
neglect to operate the gates and lower them across the street
when there are cars approaching, would be negligence on the
part of the railroad company. Whether it was negligence in
not having the gates so operated, at this time of day, depends
on how much travel there was ordinarily across the tracks at
that time. And that is a question for you to decide. I can-
not say, that, as a matter of law, it was negligence in them not
to have the gates in operation at that time. [If at that time
there was a considerable amount of travel, then the fact that
the gates were up would be notice to the plaintiff that there
was no danger in crossing the track; it would be an invitation
to him to cross the track. At the same time it would not ex-
cuse him from exercising due care in approaching and crossing
the track and finding out whether or not there were approach-
ing cars. Because the fact, if it is a fact, that the railroad
company were negligent, would not excuse him for being
negligent. He must use proper care in crossing, irrespective
of the fact whether or not the railroad company used care.] [3]

It is also the duty of the employees of the company to give
some warning of their approach, riding on a car, or of other
employees of the company to give some warning of their ap-
proach, whether by lowering the gates, or by a watchman, or
by crying out. The eight men on this car, or such as testify,
tell you that they did halloo at the tops of their voices. The
plaintiff tells you that he heard nothing of the kind, and Mr.
Decknor says he heard nothing of the kind. And now it is
for you to say whether they did give such warning, and whether
that warning was sufficient to excuse them from any negligence,
or relieve them from the imputation of negligence.

If you find that the employees of the railroad were guilty of
negligence, it is your duty to inquire whether or not the plaint-
iff was negligent; for if he was guilty of negligence which
contributed to the accident, he cannot recover, no matter how

negligent the employees of the railroad company were. It was the duty of the plaintiff to use care in approaching the tracks, to stop and look and listen for approaching cars. It was also his duty to keep such lookout as was reasonable, while crossing the track, and avoid a car if he could, even after he had started to cross; and it was his duty that the horses should be driven in a careful and cautious manner. The plaintiff and the driver both say they crossed on a walk. The witnesses on the other side say they crossed on a smart trot, and that neither the plaintiff nor the driver was looking toward the west, and that they paid no attention to the warning given them by those on the car. These are circumstances for you to consider in determining whether or not the plaintiff was himself guilty of negligence.

If you find for the plaintiff on this point, and find that the railroad company were negligent, and that this accident resulted from their negligence, and that the plaintiff was guilty of no contributory negligence, it would be your duty to fix the amount of damages. In doing this you should take into consideration the expense of the plaintiff's sickness, although I think there has been no evidence given of the amount paid for medical attendance, etc. You do not know what that was. You should take into consideration the loss of wages he has suffered and will suffer during his life in consequence of this injury. Upon that point you have the testimony of witnesses who tell you how much he earned before the accident, and also the testimony as to how much he has been able to earn since the accident, and as to his disability to work now. In considering the amount, it is your duty to consider the probability of his life. Tables of mortality have been shown to you which show that at the age of 23, when he was injured, the probability of life was 40 years. It is claimed by the defendant that although the plaintiff was injured at the time of this accident, yet his present condition is not wholly the result of that injury, but partially the result of the other misfortune which he has had; this hunch on his back. And the testimony of the physicians as to whether or not this condition was produced by the injury or the hunch, is conflicting. You have only the right, in considering the damages you should award him, if anything, to consider the disability that resulted from this injury. If

any part of the disability resulted from the other misfortune that he has, you cannot take that into consideration in fixing the damages. The defendant is only liable for the injury caused by its negligence, and for no disability caused by other causes. [You have also the right, in estimating the damages, to consider the pain and suffering that he has undergone and may undergo in the future.] [5] Take all these matters into consideration, and I need not remind you that it would be improper in considering this case, to be influenced by any consideration of sympathy for the plaintiff or prejudice against the defendant, because it is a corporation. . . . . .

The plaintiff requests the court to charge :

1. That if the jury find from the evidence that at the time of the accident the safety-gates at the Parade street crossing were up, and that no warning was given of the approach of the car, then the plaintiff had a right to presume that the track was clear ; and, unless the jury are satisfied by affirmative evidence that the plaintiff was guilty of contributive negligence, the plaintiff is entitled to recover.

Answer : It was the duty of the employees of the railway company to give timely and sufficient warning of the approach to the street crossing. Whether or not in this case there was such warning is a question for the jury. I cannot say that the fact that the safety-gates were open, on the occasion of the passage of the hand-car, was per se negligence. If the jury find that there was no warning given at all, the plaintiff had a right to suppose that the track was clear, and if upon crossing the accident resulted from the negligence of the defendant's employees, without any contributory negligence upon the part of the plaintiff, he is entitled to recover in this suit. [4]

The defendant requests the court to charge :

1. It was the duty of the plaintiff to stop and look and listen, at a point where he could see the main tracks of defendant's railroad, and his failure to do so, his own evidence showing that there was such a point, the tracks running straight both west and east, constitutes contributory negligence on his part.

Answer : The plaintiff, about to cross the tracks of the defendant, was bound to stop, look and listen to discover whether or not there was danger in crossing, from approaching trains or

cars. If he did not do so he was guilty of contributory negligence. If the jury find that upon the tracks near the crossing there were cars standing, obstructing the view of the defendant's main tracks, it becomes a question of fact for the jury to determine whether or not, on the occasion of this accident, he was guilty of contributory negligence.[2]

The jury returned a verdict in favor of the plaintiff for $9,000. A rule for a new trial having been discharged, the plaintiff took this writ, assigning for error :

1. The refusal of defendant's motion for compulsory nonsuit.[1] *

2. The answer to defendant's first point.[2]

3. The portion of the charge included in [ ] [3]

4. The answer to plaintiff's first point.[4]

5. The portion of the charge included in [ ] [5]

*Mr. Wm. A. Galbraith,* for the plaintiff in error :

1. On the showing of the plaintiff, there was no case for the jury. It was his duty to stop, look and listen before attempting to cross the tracks of the defendant's railroad. But he stopped at the tracks of the P. & E. Railroad, which are south of defendant's railroad. It was therefore error to instruct the jury that " the fact that the gates were up would be notice to the plaintiff that there was no danger in crossing the track ; it would be an invitation to him to cross the track." The qualification, as to the necessity for his exercise of proper care, was not enough. The law recognizes but one rule as to this duty and that is that the person about to cross a railroad track must stop and look and listen ; a failure to do so is negligence per se, and a question for the court and not for the jury: Penn. R. Co. v. Beale, 73 Pa. 504 ; Penn. R. Co. v. Ackerman, 74 Pa. 265 ; McWilliams v. Keim, 22 W. N. 372 ; Collins v. Leafey, 124 Pa. 203.

2. Ordinarily, the existence of negligence is a question for the jury, but when the facts are uncontroverted, their legal effect is a question of law for the court: Del. etc. R. Co. v.

*Is the refusal to order a compulsory nonsuit assignable as error ? See Bavington v. Railroad Co., 34 Pa. 358; Pownall v. Steele, 52 Pa. 446; U. S. Telegraph Co. v. Wenger, 55 Pa. 262; Mobley v. Bruner, 59 Pa. 481; Lehman v. Kellerman, 65 Pa. 489; Ballentine v. White, 77 Pa. 20; Easton Borough v. Neff, 102 Pa. 474.

Cadow, 120 Pa. 559; Pittsb. & C. R. Co. v. McClurg, 56 Pa. 294; Erie City v. Magill, 101 Pa. 616. And it is to be especially noticed that there is a marked distinction between ordinary cases involving the questions of negligence and contributory negligence, and. those arising from the rule as to the crossing of railroad tracks. This rule involves a determinate measure of duty, the same under all circumstances, and the compliance or non-compliance with it is for that reason for the court: Penn. R. Co. v. Peters, 116 Pa. 206. The instructions given as to what constitutes due care and caution, and what is meant by contributory negligence; were entirely too indefinite. The general effect of the charge was to diminish the force and importance of the rule, the value of which can hardly be overestimated. When a railroad company adopts safety-gates, or other appliances for the protection of the public, the public are not thereby absolved from the duty of taking care of themselves: Greenwood v. Railroad Co., 124 Pa. 572.

3. The settled rule, as laid down by this court in numerous cases, limits the damages to be given for prospective pain and suffering to compensation for such as are *likely* to be endured in the future, but in this case the jury was permitted to guess at what might possibly be so endured. " You have also the right, in estimating the damages, to consider the pain and suffering that he has undergone, and may undergo in the future." It is not enough to say that this error in the general charge was cured ·by the affirmative answer to the plaintiff's fourth point: Phila. & R. R. Co. v. Adams, 89 Pa. 31. In all the cases involving damages for personal injuries, the rule limiting the amount to actual compensation, including compensation for pain and suffering likely to be afterwards endured, has been constantly recognized, save where the injuries were the result of wilful misconduct amounting to gross negligence: Penn. R. Co. v. Allen, 53 Pa. 276. The rule universally accepted was well stated and followed in Scott Tp. v. Montgomery, 95 Pa. 444.

*Mr. E. A. Walling* (with him *Mr. C. M. Lynch* and *Mr. John P. Vincent*), for the defendant in error:

1. Where the evidence shows that the party injured did not stop and look and listen, there can be no recovery; but where

the evidence shows clearly, as in this case, that the plaintiff did stop and look and listen, before attempting to cross the defendant's tracks, it cannot be declared as matter of law that he was guilty of contributory negligence. At just what point a party should stop and look and listen, depends upon the varying circumstances of each case, and is a question for the jury : North Penn. R. Co. v. Heileman, 49 Pa. 60 ; Penn. R. Co. v. Ogier, 35 Pa. 60 ; Arnold v. Railroad Co., 115 Pa. 135. No authority is cited to show that it is necessary to stop a second time to look and listen, and that, while crossing a set or system of tracks, as in this case. The contrary doctrine is expressly laid down : Penn. R. Co. v. Garvey, 108 Pa. 369 ; Wharton on Neg., § 386.

2. The evidence in this case shows a still stronger case of negligence on the part of the defendant company than was shown in McWilliams v. Keim, 22 W. N. 372, in which the trial court ordered a compulsory nonsuit, and in so doing committed the same error which the defendant asked the court below to commit in this case. That it is negligence for a railroad company to approach a public crossing with its trains or cars without giving due and timely warning, is too well settled to require the citation of authorities. That it is negligence for a railroad company to have its tracks at a public crossing filled up with cars standing thereon, is shown by Penn. R. Co. v. Ackerman, 74 Pa. 265, and Penn. R. Co. v. Horst, 110 Pa. 226. But whether or not it is negligence not to have safety-gates at grade crossings in cities and towns : Phil. & R. R. Co. v. Carr, 99 Pa. 513, it is certainly powerful evidence of negligence to have safety-gates and then leave them open in the daytime when cars are passing.

3. The only criticism of the charge upon the subject of the damages suggested, is that in one sentence the word "may" is used where some of the cases use the words "is likely." But the words are practically synonymous and are used indiscriminately. In Menges v. Muncy Creek Tp., 1 Penny. 179, the court used the word "may" in this connection. The judgment of the court below was affirmed in this court. Detached portions of the charge, and especially only a part of a sentence, should not be assigned for error : Penn. R. Co. v. Coon, 111 Pa. 430. Had the detached sentence been inaccurate, however,

the court would not reverse the judgment for that: Trego v. Pierce, 119 Pa. 139. "Some substantial injury must have been the actual or probable result of such error, to justify us in disturbing the judgment."

OPINION, MR. JUSTICE MITCHELL:

The testimony on behalf of the plaintiff was to the effect that a public crossing in a city street was partially obstructed by standing cars: Penna. R. Co. v. Ackerman, 74 Pa. 265; Penna. R. Co. v. Horst, 110 Pa. 226; and this crossing, the view of which was thus obstructed, was approached by a hand-car at the rate of ten miles an hour, noiselessly, and without warning of any kind until the collision was imminent, and that the safety-gates which were there in accordance with the requirements of the city ordinances, were open, and thus tended to mislead the plaintiff. This evidence made a clear prima facie case of negligence for the jury. A nonsuit therefore could only be granted on the ground of manifest contributory negligence of the plaintiff. This we do not find. There were a number of tracks, and the evidence is strong that the plaintiff stopped, looked and listened before crossing the first. It might still have been his duty to stop again before going upon the track of the defendant company on which the collision took place, but the evidence does not enable us to say so as a matter of law. It is far from clear that the place where plaintiff stopped was not the best, or that there was any safe place for a second and better view. It was proper therefore that the case should be left to the jury, and the nonsuit was rightly refused.

For the same reasons the defendant's first point, which assumed as an established fact that "plaintiff's own evidence showed there was such a point," might have been refused entirely, and the qualified answer of the court did defendant no injury. The first and second assignments of error are therefore not sustained.

The third and fourth assignments have given us more trouble, and on these points this is a very close case. Portions of the charge and of the answer to plaintiff's first point, especially the phrases, "the fact that the gates were up would be notice to plaintiff that there was no danger in crossing the track; it

would be an invitation to him to cross the track," and "if the jury find that there was no warning given at all, the plaintiff had a right to suppose that the track was clear," are certainly erroneous if applied to the plaintiff's conduct, or used in defining to the jury the standard of contributory negligence. The duty to stop, look and listen is absolute and unyielding. It is for the protection of the train and its occupants, as much or more than for that of travelers on the highway, and no amount of negligence on the part of the defendant can absolve the plaintiff from its obligation. The fact that the safety-gates were up did not and could not release the plaintiff from the necessity of observing the imperative rule for all railroad crossings. As said by the present Chief Justice in the closely similar case of Greenwood v. Railroad Co., 124 Pa. 572, a plaintiff "has no right to omit the ordinary precautions when approaching a railroad crossing merely because he finds the gates up."

But while the fact that the gates were raised is no excuse for the failure of a plaintiff to stop, look and listen, yet on the other hand it is some evidence of negligence on the part of the defendant. Its tendency is certainly to give the approaching traveler the impression that the crossing is safe, and thereby to blunt the edge of his caution. It may of course be susceptible of full explanation. As said in Greenwood v. Railroad Co., supra, "machinery of all kinds is liable to get out of order, and may do so just at the critical moment of the approach of a train." But unexplained it is evidence of negligence, and as such is a proper subject of comment in the charge of the court. The passages already quoted would be clearly erroneous as applied to the plaintiff's negligence, but they would equally clearly be correct if applied to the negligence of the defendant. They must be examined and judged in connection with their immediate context. The passage from the charge that the gates being up was an invitation to cross, follows immediately after a refusal to say that it was negligence in law, and a reference of it to the jury as a question of negligence in fact, and is followed in the same immediate connection by the qualification that " at the same time, it would not excuse him from exercising due care in approaching and crossing the track, and finding out whether or not there were ap-

proaching cars ; " and what was meant by due care, is defined, a few sentences farther on, by the instruction that it " was the duty of the plaintiff to use care in approaching the tracks, to stop and look and listen for approaching cars."

The answer to the plaintiff's first point is very similar, and if regarded separately may also be taken as applied either to the plaintiff's or the defendant's conduct, but taken with its context it appears to apply to the defendant, and this is made entirely clear by the unqualified affirmance of defendant's third point, that the fact of the gates being open would not excuse the plaintiff from the duty of stopping to look and listen before attempting to cross.

Taking the passages as a whole, with what preceded and followed, though the distinction between what was meant to define the plaintiff's own duty, and what was said with reference to defendant's negligence, is not so clearly expressed as would be desirable, yet on a fair survey of the general effect we cannot say that it did not give the jury correct instruction as to the law.

The same course of remark is applicable to the portion of the charge relating to the damages. The fifth error complained of is the charge that the jury may consider the pain and suffering the plaintiff " has undergone, and *may undergo* in the future." The expression is not felicitous, and there is a notable absence throughout the charge of the word compensation, which should always be made prominent in cases of this class. See remarks on this subject in Collins v. Leafey, 124 Pa. 203. But the idea of compensation was clearly in the judge's mind and was fairly brought before the jury in the enumeration of the elements of the damages they should award if they should find for the plaintiff. These are stated by the learned judge in the general charge to be the expenses of plaintiff's sickness, the loss of wages he has suffered and will suffer, and the pain and suffering he " has undergone and may undergo," and in the answer to plaintiff's fourth point, where the pain and suffering are expressly limited to that " already experienced, and likely to be yet experienced." Taking all this together, the idea of compensation, though not made as distinct and prominent as is desirable, was fairly put before the jury, and it would be hypercritical and unjust to separate the single phrase " may under-

go " from its context, and say that it gave the jury an unbridled license in the ascertainment of the damages, or left them without any guide at all as in Phila. & R. R. Co. v. Adams, 89 Pa. 31, and Collins v. Leafey, 124 Pa. 203.

Though open to criticism in the several points reviewed, the charge as a whole contained no substantial error.

Judgment affirmed.