UNION PAC. R. CO. et al. v. ROSEWATER.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1907.)

No. 2,468.

1. RAILROADS—INJURY OF PERSON AT CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where plaintiff, who was driving upon a city street in the evening, on approaching a railroad crossing having four tracks, stopped on signal of the flagman before reaching the first track, and waited until some engines had passed, and then in obedience to a signal of the flagman started on after first looking and listening, and was struck by a train on the second track, the question whether or not he was guilty of contributory negligence in failing to continue to look and listen after starting across was not one of law but of fact, to be determined by the jury, in view of the circumstances of the particular case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1187.]

2. SAME—DUTY TO LOOK AND LISTEN—SIGNAL FROM FLAGMAN.

The placing of gates or the stationing of flagmen at railroad crossings in a city are not duties imposed by statute or municipal ordinance on railroad companies, or voluntarily assumed by them, for the purpose of relieving the traveler on the street from taking those precautions for his own safety required by the long-settled rule of law, but as additional precautions to meet the increased peril resulting from local conditions in cities; and open gates, or a signal from a flagman to cross, do not relieve a traveler from the duty to look and listen before entering upon the tracks.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1072.]

In Error to the Circuit Court of the United States for the District of Nebraska.

Edson Rich and William Baird (W. S. Kenyon, on the brief), for plaintiffs in error.

W. J. Connell (Simeon Bloom, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. Charles Rosewater sued the Union Pacific and the Illinois Central railroad companies for personal injuries sustained in a collision at a crossing. He recovered a judgment against them jointly, and they now seek its reversal. The facts developed at the trial are as follows: The plaintiff, a physician, was driving in his phaeton northward on Thirteenth street in Omaha, Neb., about 8 o'clock of a January evening. The street is one of the important, much traveled thoroughfares of the city. As he was approaching the intersecting tracks of the Union Pacific, upon one or more of which the Illinois Central had the right to operate its trains, he was signaled to stop by a flagman who was in the service of both companies. The signal was given by lantern, and the plaintiff stopped with his horse's head three or four feet south of the south track. There were four of

these tracks, and, for convenience, they will be referred to numerically beginning with the one nearest the plaintiff. They crossed the street at somewhat of an angle—not squarely—and as they proceeded westward they curved towards the south, out of sight. The plaintiff's view to his left or westward was obstructed to some considerable extent by a stone wall built along the side of the street to support a viaduct which crossed overhead behind him. The north end of the wall was about 10 feet from the south track, at which point the wall was 6.2 feet high. As it receded southward along the street side, the wall rose in height until it attained its maximum for the support of the overhead viaduct structure. From the end near the south track the wall curved westward at substantially the same height, and served to retain a fill upon which was laid the track that crossed on the viaduct. There was a similar obstruction on the east side of the street to the right of the plaintiff as he sat in his phaeton, but we are not specially concerned with it. The flagman gave plaintiff the stop signal from his customary stand on the north side of the tracks. Immediately after the plaintiff stopped, two Union Pacific engines, coupled together, went westward over the crossing upon the third track. After they passed, the flagman both signaled with his lantern and verbally directed plaintiff to cross. As to this there was a conflict in the evidence, but as that was the issue which the trial court submitted to the jury we take the verdict as settling the fact here. In obedience to the flagman's direction the plaintiff applied the whip to his horse, and drove over the first track and upon the second, where he was struck by an Illinois Central train coming from the west at a speed variously estimated by witnesses at from 15 to 35 miles per hour. The injuries complained of were caused by this collision. The headlight of the locomotive was burning. The flagman knew the train was coming. There was testimony that considerable steam and smoke from the Union Pacific engines were driven by the wind towards the plaintiff, but whether they were sufficient to obscure his vision as he started to cross remains an unsettled question. The issues of fact were so narrowed by the trial court that the verdict does not answer it. A civil engineer testified, and his testimony was not denied, that a man standing about five feet south of the first track where the plaintiff's horse stood could see westward upon the second track, over which the Illinois Central train came, a distance of 375 feet. But the plaintiff, as he sat in his vehicle, was 6 or 7 feet further away, and no measurements were taken from his position. If the plaintiff had driven forward to place himself at the point from which the measurements were taken, his horse would have been upon the first track. The first and second tracks were a little more than 10 feet apart. The plaintiff testified that, upon receiving the direction of the flagman, he first looked to the left and to the right, and perceiving no train approaching he drove forward. He also said that, after starting forward, he did not again look along the tracks, but "relied on the order of the flagman, together with the invisibleness of any danger."

These are the substantial facts, and on them the defendants moved the trial court for a directed verdict (1) because no negligence on their part was disclosed—that is to say, no negligence of their flagman; and (2) because contributory negligence of the plaintiff was shown.

The first of these assertions, obviously untenable, need not be further mentioned. As to the second: Assuming for the moment that the maintenance of a flagman at the crossing, and his signal to the plaintiff to cross the tracks, did not relieve the latter from the duty to take those precautions for his safety which the law imposes in cases where no flagmen are present, can it be said the evidence that he failed in his duty was so conclusive as to justify a court in holding that he negligently contributed to his own injury? We think not. It is a settled rule of law that the traveler upon a highway must look and listen before venturing upon the track, and that he must, if possible, perform that duty at some point in his approach where performance will be serviceable. It is conceded that the plaintiff stopped close to the track, and he testified that after receiving the flagman's direction, and before venturing further, he looked for coming trains, but saw nothing. It is true that after driving on the track he did not again look to the right and left, but we cannot say that it was his duty to do so. The rule of law does not go so far. When a traveler upon a highway is approaching a railroad crossing—a place of danger—it is altogether reasonable that he should use his senses to discover whether it is safe to go upon it, and also to stop before doing so if the physical surroundings make that further precaution necessary. He is then in safety and entirely master of his movements, and, as all reasonable minds agree that such measure of care should be taken for the preservation of life and limb, the law has prescribed its exercise as an imperative duty. But when the traveler has performed his full duty in that respect, and has driven upon the crossing at the invitation of a flagman stationed there by the railroad company to assist in the prevention of accidents, whether, in addition to his attention to the guidance of his vehicle, he should continue to look to the right and to the left is a more doubtful proposition. He is then in a position of possible peril, and, in view of the various emergencies likely to arise, just what particular precaution he should take is not so clear and plain as to justify its prescription as a definite, fixed rule of conduct. Were it otherwise, the doing of the very thing prescribed might lead to disaster. The measure of care and caution to be observed in such cases should be more adjustable to the particular conditions and emergencies, and is that active watchfulness which ordinarily prudent men would adopt under like circumstances; and the question whether the traveler fell short is one for the jury. In the very case before us, had the plaintiff looked while his horse was upon the first track and seen the headlight of the rapidly approaching train, it is doubtful that in the darkness he could have told upon which of the tracks, running closely parallel, it was coming; and in case of uncertainty his natural impulse would have been to hasten forward rather than to turn backward. It is not at all clear that the precautions which counsel claim to be imperative would have been effectual to prevent the collision. The plaintiff was not a pedestrian, having quick control of his own movements, whose vigilant use of the senses affords almost a complete assurance of his personal safety; but he was incumbered with a horse and vehicle, more unwieldy in management, and which to some extent naturally required attention. This distinction is recog-

nized in Blount v. Railway, 9 C. C. A. 526, 61 Fed. 375, in which it was held that a pedestrian who accepted the invitation of open gates was nevertheless guilty of contributory negligence in failing to look and listen.

But it is said that the physical facts show that the plaintiff could have seen had he looked before venturing upon the crossing unless the presence of steam and smoke temporarily obscured his vision, and that in the latter case it was his duty to wait until they passed away. Clear physical facts prevail over the testimony of a witness and over the presumption that one injured or killed took care for his safety (Tomlinson v. Railway, 67 C. C. A. 218, 134 Fed. 233) and if plaintiff could have seen it must be assumed that he did not look or that looking he tried to cross ahead of the train. But the state of the evidence does not warrant us in saying either that his vision was temporarily obscured by steam and smoke or that under most favorable conditions he could have seen the headlight from where he sat in his vehicle. Counsel for defendants attempt a demonstration that he could have seen had he looked, but in doing so they speculate as to the speed of the horse, make estimates of the time that elapsed before the collision and finally split a second into halves. The premises are too debatable to warrant such a conclusion by a court whose sole province in a case like this is the correction of errors of law. The defendants were not entitled to a directed verdict.

The trial court, however, did not submit to the jury the questions whether plaintiff looked before driving on the crossing, and whether he could have seen had he looked. The defendants requested instructions specifically defining the plaintiff's duties as in ordinary cases, but the court declined to give them. On the contrary, it instructed the jury that, if the flagman signaled the plaintiff to cross, the latter had a right to presume that it was safe for him to do so, "unless he knew the danger of doing so, and that the danger was so obvious and threatening that no man of ordinary care and prudence would have assumed the risk." Out of the giving and refusal of the instructions mentioned arises the serious question in the case.

Does the signal of a flagman at a railroad crossing of a city street relieve the traveler on the highway of the duty to look and listen before venturing upon the tracks? The additional precautions to prevent accidents, such as gates and flagmen, with their means of giving warning, are adopted in view of the greatly increased dangers at such crossings. The noise of city traffic, the number of pedestrians and vehicles upon the street, the haste and activity of urban life, the frequency of the passing of engines and trains, and the proximity of buildings and other structures to the tracks make such precautions necessary. They are designed to meet the increase of peril resulting from local conditions and the congestion of traffic. Such additional precautions are not imposed by statute or municipal ordinance upon railroad companies, or voluntarily assumed by them for the purpose of relieving the traveler upon the street from the taking of those simple precautions for his own safety which the long-settled rule of law requires of him. To hold otherwise would tend to defeat the very purpose for which gates and flagmen are maintained. It would result not so much in lessening

danger and ensuring safety as in the mere transference of a mutual obligation to exercise care entirely to the shoulders of one of the parties. The courts are divided upon the question, some holding the traveler must still look and listen (Greenwood v. Railroad, 124 Pa. 572, 17 Atl. 188, 3 L. R. A. 44, 10 Am. St. Rep. 614; Railway v. Frantz, 127 Pa. 297, 18 Atl. 22, 4 L. R. A. 389; Berry v. Railroad, 48 N. J. Law, 141, 4 Atl. 303; Ellis v. Railroad, 169 Mass. 600, 48 N. E. 839. See, also, Merrigan v. Railroad, 154 Mass. 189, 28 N. E. 149); others that he may rely wholly upon the invitation of the flagman or the open gate (Railroad v. Webb, 90 Ala. 185, 8 South. 518, 523, 11 L. R. A. 674; Railroad v. Anderson, 109 Ala. 299, 19 South. 516; Railroad v. Clough, 134 Ill. 586, 25 N. E. 664). The case of Railway v. Frantz, supra, was one of open gates. The Supreme Court of Pennsylvania upheld an instruction of the trial court that "it was the duty of the plaintiff to use care in approaching the tracks, to stop, look, and listen for approaching cars. It was also his duty to keep such lookout as was reasonable while crossing the track and avoid a car if he could, even after he had started to cross; and it was his duty that the horses should be driven in a careful and cautious manner." The Supreme Court also said:

"There were a number of tracks, and the evidence is strong that the plaintiff stopped, looked, and listened before crossing the first. It might still have been his duty to stop again before going upon the track of the defendant company on which the collision took place, but the evidence does not enable us to say so as a matter of law. It is far from clear that the place where plaintiff stopped was not the best, or that there was any safe place for a second and better view. It was proper therefore that the case should be left to the jury, and the nonsuit was rightly refused."

In our opinion the rule stronger in reason and more consistent with wise policy is that we have indicated. Whether the plaintiff looked for approaching trains before venturing upon the tracks, and whether, looking, he could have seen, were matters material to the defense, and the jury should have been so instructed. The trial court in effect held them unimportant when it instructed the jury that plaintiff had a right to act upon the invitation of the flagman unless confronted by a known danger or one obvious and threatening. In other words, it was held that the plaintiff had no active duty for his own safety; that he could rely on the flagman unless the danger of doing so obtruded itself on his notice.

Counsel cite the decision of this court in Eddy v. Powell, 1 C. C. A. 448, 49 Fed. 816. In that case a freight train had been cut at a city crossing, leaving a space between the two sections through which vehicles and pedestrians could pass. The plaintiff drove up and stopped. There was evidence that he was then directed to cross by the conductor or brakeman of the train who was standing at or near the crossing, and whilst he was attempting to do so the engineer suddenly backed the front section to couple up the train, and the injury resulted. This court sustained instructions that, if the direction to cross was given the traveler, he had a right to rely on it unless he was aware of the danger, or some danger was so obvious as would have deterred a man of ordinary prudence from attempting to cross. The train was at

rest, and presumably the conductor or brakeman knew when a movement for coupling would be made. The plaintiff saw all there was to be seen, and the most vigilant use of his senses would not have helped him more. He was not required to alight and make inquiry of the engineer, nor, under the circumstances, was it his duty to wait an indefinite time for the train to be coupled up and to pass away. Railway v. Ray, 25 Tex. Civ. App. 567, 63 S. W. 912, and Railway v. Keely, 138 Ind. 600, 37 N. E. 406, are like Eddy v. Powell, in that foreknowledge of the movement of the engine or train could not be gained by the traveler by any measure of care that the law imposed on him. It is quite clear that these cases furnish no guide for the one before us.

The judgment is reversed and the cause remanded, with direction to grant a new trial.

SANBORN, Circuit Judge (concurring). I concur in the reversal of the judgment on the ground stated in the opinion of the court, and also because, in my view, the plaintiff was conclusively proved to have been guilty of contributory negligence. As I understand it, the evidence conclusively established these facts. The plaintiff stopped when he was from 10 to 25 feet south of the first track. His witness Kretek stood at the north end of the east abutment. He testified that the steam and smoke were insufficient to obscure their vision of the oncoming engines and train, and there is no substantial evidence to the contrary, and that he saw the engines coming from the west on the third track and the flagman on the north side of that track. Kretek and the plaintiff saw the two engines coming from the west on the third track before the flagman signaled them to stop. The Illinois Central train was coming from the east on the second track with the headlight of the engine burning. The two engines coming from the west on the third track passed between the flagman and the Illinois Central train, and necessarily obstructed his vision of it for a time, while the only obstruction to the plaintiff's view was the east abutment of the viaduct. From the point where he was sitting in his buggy he could not see easterly along the second track more than 80 feet, according to the most favorable testimony on his behalf, but at a point 5 feet south of the first track and 22 feet south of the second track he could see to the east along the latter track 375 feet. When he came out from behind the obstruction of the abutment to this point, the passenger engine with its blazing headlight was within 140 feet of the crossing, and he could not have failed to see it if he had looked, nor, if he had exercised reasonable prudence, to have appreciated and avoided danger from it, either by stopping his horse or by backing him to his former position. His horse was no nearer the second track when the coming train was visible to him than he was to the first track when he stopped him. The plaintiff, when he received the signal and direction of the flagman to cross, looked to the east, when he knew that a plain obstruction necessarily prevented his looking from being of any avail, but when he came from behind that obstruction to a point where looking would have been of use and where, if he had looked, he must have seen, he did not look, and his failure to look was one of the direct causes of his injury. The judge

who heard the witnesses and tried this case below was of the opinion that the evidence conclusively proved the contributory negligence of the plaintiff, unless it was justified by the signal and order of the flagman, and he so instructed the jury. As he was not justified by that signal and order in failing to continue to exercise ordinary care for his safety, and as ordinary care at a railroad crossing where the view is obstructed at one point and clear at another requires the traveler to look along the track as soon as he passes the obstruction, or as soon as it is removed, the plaintiff's failure to look after he could have seen and before he crossed was, in my opinion, contributory negligence fatal to his action.

One "does not relieve himself from the imputation of negligence by looking when he cannot see, and omitting to look again when he could see, and avoid danger." Grand Trunk Ry. Co. v. Cobleigh, 24 C. C. A. 342, 78 Fed. 784, 787; Fletcher v. Fitchburg R. R. Co., 149 Mass. 127, 21 N. E. 302, 3 L. R. A. 743; McCrory v. C., M. & St. P. Ry. Co. (C. C.) 31 Fed. 531; Abbett v. C., M. & St. P. Ry. Co., 30 Minn. 482, 16 N. W. 266, 267. "We cannot avoid the conclusion that the deceased did not look up or down the track as he should have done, after passing the wood office. If he had so looked, he certainly must have noticed the headlight of the approaching train. If he did not look, he must have been careless, and attempted to cross the track when he should not have done so," said the Supreme Court of Michigan in Kwiotkowski v. Chicago & G. T. Ry. Co., 70 Mich. 551, 38 N. W. 463, 464; Gardner v. Detroit, L. & N. Ry. Co., 97 Mich. 240, 56 N. W. 603.