## PAUL C. GREENWOOD v. PHIL. W. & B. R. CO.

ERROR TO THE COURT OF COMMON PLEAS OF DELAWARE COUNTY.

Argued February 15, 1889—Decided March 18, 1889.

1. The rule requiring one about to cross the tracks of a railroad company, to stop, look and listen for an approaching train, is a clear and certain rule of duty, and a failure to observe it is more than evidence of negligence, it is negligence of itself.

2. Moreover, the rule is applicable as to railroad crossings in cities and towns, as well as to crossings in the open country, and whether safety-gates are maintained at street crossings or not, and whether or not ordinances regulating the speed of approaching trains are observed by the railroad company.

Before Paxson, C. J., Sterrett, Williams, McCollum and Mitchell, JJ.

No. 213 January Term, 1889, Sup. Ct.; court below, No. 107 September Term 1887, C. P.

On September 17, 1887, a summons issued in an action by Paul C. Greenwood against the Philadelphia, Wilmington & Baltimore Railroad Company, to recover damages for personal injuries received and charged to the alleged negligence of the defendant company. Issue.

At the trial on September 26, 1888, the essential facts appearing were as follows:

In March, 1887, the plaintiff for a short time had been a member of a fire company in the city of Chester, and knew the line of the defendant company's road crossing Welsh street at a point one square above Fifth street. At about 11 o'clock at night on March 26, 1887, there was an alarm of fire, and the plaintiff with another jumped upon the steps at the rear end of a hose carriage. In that position he could not see over the seat in front, where the driver sat. The hose carriage was driven rapidly down Fifth street for half a square and then turned up Welsh, proceeding without being checked towards the railroad crossing. Though the plaintiff had control of the hose carriage, he gave no directions to the driver.

### Charge of Court below.

As required by city ordinance the defendant company maintained a pair of adjustable gate-bars at the crossing on Welsh street, one on each side of the line, which were let down on the approach of a train and bore a red light indicating at night the position of the bars, as being up or down. On the night in question, the working parts of the gateway were out of order and the bars elevated, without the red light upon them. There was an ordinance forbidding the approach of trains to crossings at a greater speed than five miles an hour. On the side of Welsh street towards which a train was approaching, the street was built up with houses. There was evidence on the part of the plaintiff that no watchman was out at the crossing; that no bell was rung, and that the train approached at over ten miles an hour.

As the hose carriage and its occupants crossed the track they were struck by a passing train and the plaintiff thrown beneath the cars, where his left foot and hand were so crushed that they had to be amputated.

On the part of the defendant company evidence was introduced to show that the hose carriage was being driven at a headlong rate of speed on Welsh street; that the plaintiff was continuously ringing the carriage gong; that the working parts of the gate-bars had been out of repair since the morning of that day, and as a substitute a watchman was at the crossing signaling with a lantern and white light, and in full view for a distance of 300 feet; and the driver of the hose carriage admitted on the stand that he had seen the danger signal when he was 100 feet from the crossing, but thought that the gate-tender " had probably come out a minute before the train would come to the crossing; they generally do that, and I thought if that was the case I could probably get across before the train got there."

There were no points submitted and the court, CLAYTON, P. J., charged the jury:

After carefully listening to all the evidence in the case before us, I am of opinion, as a matter of law, that the plaintiff has failed to make out a case sufficient to warrant or sustain a verdict in his favor. I hold that it is the duty of every traveler upon a public highway crossed by a railroad, before

attempting to cross the road, to stop, look and listen. If he hears no approaching train or sees none, then he may cross. Any traveler who neglects that duty is guilty of negligence, and when there is contributory negligence—when both parties are negligent—the law does not permit a recovery by either, as it does not pretend to measure the amount of negligence, so as to ascertain whether one party is more negligent than the other. The only question in my mind, when the first motion was made for a nonsuit, was whether the fact that the company had undertaken to erect safety-gates at these crossings, did not make it their duty to so guard the road as to relieve travelers from their duty of stopping, looking and listening; but, upon reflection, and after hearing all the evidence in the case, I am of opinion that that was intended as an additional safeguard of public travel, and not to relieve the traveler from any previous care for his own protection. The duty still remains, although the gates be there. Although extra precautions are taken by the railroad, the duty still exists for every traveler in crossing the railroad to stop, look and listen. If he does not do that, he cannot recover. It will, therefore, be your duty to find a verdict for the defendant, and if the court is wrong, the plaintiff will have his redress either by a new trial granted by this court, or by a reversal of this judgment by the Supreme Court. You are, therefore, directed to render a verdict for the defendant.

The jury returned a verdict for the defendant, as directed. Judgment having been entered, the plaintiff took this writ, assigning the instructions to the jury as error.

*Mr. J. B. Hinkson* and *Mr. W. B. Broomall* (with them *Mr. J. H. Hinkson*), for the plaintiff in error:

1. The rule that one about to cross a railroad track must stop, look and listen, does not apply in all cases : Penn. R. Co. v. Ackerman, 74 Pa. 268. The two cases, Penn. R. Co. v. Beale, 73 Pa. 504, and Reading etc. R. Co. v. Ritchie, 102 Pa. 433, where the rule was enforced in all its strictness, were both cases of accident in the open country, where the railroad companies had a right to run their trains as fast as they chose. An inspection of the cases referred to in the opinions in those cases, to wit: North Penn. R. Co. v. Heileman, 49 Pa. 60;

Hanover R. Co. v. Coyle, 55 Pa. 396 ; Penn. R. Co. v. Weber, 76 Pa. 157, will show that they were all cases either in the open country, or in small towns, where the railroad company was compelled neither by ordinance nor by prudence to adopt extra precautions, and where none were maintained. In built-up parts of the country, in towns and villages, the railroad company is bound to use additional precautions; the traveler has the right to expect them, to rely upon them, and to govern himself accordingly : Phil. & R. R. Co. v. Ervin, 89 Pa. 76; Correll v. Railroad Co., 38 Ia. 120 (18 Amer. R. 22) ; McWilliams v. Keim, 1 Mona. 16.

2. Having shown that the rule is not inflexible, another principle applies : Whenever the plaintiff is thrown off his guard by the acts or omissions of the defendant he is not held to the same rule as to negligence that would otherwise be imposed upon him : Penn. R. Co. v. Ogier, 35 Pa. 72 ; Phil. & T. R. Co. v. Hagan, 47 Pa. 244. The facts in the case which apply to this rule, are (*a*) the disregard of the ordinance as to speed; (*b*) the absence of the usual signal and gates, and the white light instead of the red one. Moreover, another rule is applicable : As the defendant could not use the ordinary signals, the gates being broken, they were bound to use extra precautions : Phil. & R. R. Co. v. Killips, 88 Pa. 405 ; Penn. R. Co. v. Werner, 89 Pa. 59. Under these circumstances it was for the jury to decide whether the plaintiff was not misled by the absence of the ordinary signal and got into such a position of danger, because of the neglect of the defendant, as made it either impossible for the driver to stop, or called for sudden decision in extreme peril : Schall v. Cole, 107 Pa. 1 ; Schum v. Railroad Co., 107 Pa. 14 ; Penn. R. Co. v. Ackerman, 74 Pa. 268 ; Penn. R. Co. v. Coon, 111 Pa. 437 ; Schmidt v. McGill, 120 Pa. 405 ; Penn. R. Co. v. White, 88 Pa. 329 ; Penn. R. Co. v. Werner, 89 Pa. 59 ; Phil. etc. Pass. Ry. Co. v. Henrice, 92 Pa. 431 ; Penn. R. Co. v. Peters, 116 Pa. 206 ; Lehigh V. R. Co. v. Greiner, 113 Pa. 600 ; Penn. R. Co. v. Garvey, 108 Pa. 369.

*Mr. Wm. Ward*, for the defendant in error :

1. The duty imposed by law upon the traveler on the highway, to stop, look and listen, as he is about to cross a railroad

track, so as to satisfy himself whether there is a train approaching, was clearly defined nearly a quarter of a century since in North Penn. R. Co. v. Heileman, 49 Pa. 60, and has been followed to the present time : Hanover R. Co. v. Coyle, 55 Pa. 396; Penn. R. Co. v. Beale, 73 Pa. 505. The doctrine has never been modified in any material particular, but uniformly adhered to in a long line of cases : Reading etc. R. Co. v. Ritchie, 102 Pa. 425; Lehigh V. R. Co. v. Greiner, 113 Pa. 600; Baughman v. Railroad Co., 92 Pa. 335; Delaware etc. R. Co. v. Cadow, 120 Pa. 559; Marland v. Railroad Co., 123 Pa. 487; Morgan v. Railroad Co., 23 W. N. 189.

OPINION, MR. CHIEF JUSTICE PAXSON :

The plaintiff brought this action in the court below to recover damages for injuries received by him, and which he claims were caused by the negligence of the defendant company. The court below gave a binding instruction to the jury to find for the defendant. Under such circumstances, we must assume not only that all of the plaintiff's testimony is true, but that he is entitled to every inference fairly to be drawn from it.

The facts of the case, as we gather them from the evidence, may be briefly stated as follows : The plaintiff was a member of the Hanley Hose Company in the city of Chester. On the night of March 26, 1887, he was at the hose house and informed one or more members that there was a fire ; to use his own language : " It looked from Edgmont avenue to be over at Mr. Eyre's house, around Seventh street. That is where I seen the fire." No other person in Chester appears to have seen this alleged fire ; nor was there any alarm given at any of the other engine houses. The result of the plaintiff's announcement at the Hanley Hose Company's house was that the company immediately turned out. The plaintiff and one or two others got on the hose carriage, and with a spirited horse started out to find the fire. The horse was driven at a rapid rate of speed for some distance along Fifth street and then turned up Welsh street. The railroad of the defendant company was one square from the corner of Fifth and Welsh. At the railroad crossing the company had for some time kept a watchman, and safety-gates, which were lowered upon the approach of

trains.   Upon the night in question, when the hose carriage approached the crosssing, the gates were not lowered; they had become out of order that morning and had not been repaired.   The watchman displayed no light and gave no warning.   The hose carriage did not stop as it approached the track, in order to afford an opportunity to look and listen; nor did it even slacken its speed, but continued on, was struck by the train, and the plaintiff was thrown off the carriage and injured.          •

Under such circumstances does the case come within the familiar rule, "stop, look, and listen"?   It was strongly urged upon the argument that the rule referred to does not apply for the reason (*a*) that the plaintiff had a right to rely upon the fact that the safety-gates were up, and (*b*) that the said rule is not applicable to towns and cities where trains are constantly crossing streets.

I do not understand the law to be that when a railroad company adopts safety-gates or any other appliance for the protection of the public, that the public are thereby absolved from the duty of taking any care of themselves.   Conceding that the company was required to take extra precautions by reason of the gates being out of order, yet the plaintiff was also bound to do his part.   He has no right to omit the ordinary precautions when approaching a railroad crossing merely because he finds the gates up.   Machinery of all kinds is liable to get out of order, and may do so just at the critical moment of the approach of a train.   In all such cases the safety of the traveling public requires that each party shall be held to the exercise of due care.   Had this hose carriage stopped near the crossing instead of rushing on at reckless speed, this accident would not have happened.   The train could have been seen for one hundred feet before the crossing was reached.   If the rule to stop, look, and listen were always observed, an accident at crossings, now so frequent, would rarely occur, whether in town or country.   It is difficult to see why the rule is not as important in towns and cities as in the country, where in many instances the track can be seen for a long distance.   The rule itself is so valuable; is sustained by such abundant authority; and is moreover founded upon such excellent common sense reasons, that we will neither depart from it, nor allow it to be

Statement of Facts.

undermined by exceptions. It is a clear and certain rule of duty, and a departure from it is more than evidence of negligence; it is negligence per se.

I have not referred to the question of the city ordinances, for, conceding the negligence of the · defendant company, the plaintiff was guilty of such contributory negligence as bars his right to recover. Nor have I discussed the numerous cases cited, as but few of them have any application to the peculiar circumstances of this case. .

Judgment affirmed.