GARRITY *v.* DETROIT CITIZENS' STREET RAILWAY CO.[1]

1. STREET RAILWAYS—FIRE DEPARTMENT—RIGHT OF WAY—COLLISIONS.

Although the driver of a fire-department truck is by charter given the right of way when going to a fire, he is bound, upon approaching a street-car line on an intersecting street, to have his horses under such control as to permit of stopping in time to avoid a collision with any car that may be approaching, and his negligence in this respect, if actually contributing to his injury, will preclude a recovery therefor.

2. SAME—NEGLIGENCE—WHEN CONTRIBUTORY.

The fact that the driver of a fire truck was guilty of negligence in failing to have his horses under control upon approaching a street-railway line is not conclusive against the company's liability for his death from a collision with an electric car, where there is evidence that, had he had control, he would have been justified, owing to the distance of the car in question, in relying on the motorman's ability to stop in time to avoid an accident.   GRANT, J., dissenting.

3. SAME—CROSSINGS—STEAM RAILWAYS—DISTINCTION AS TO CARE REQUIRED.

While it is the duty of drivers and pedestrians in cities to employ, in crossing in front of an electric car, the degree of care required by the nature of the danger, they may properly rely to some extent upon the motorman's using watchfulness and prudence in directing the speed of the car; the rules respecting steam railways not being in all respects applicable.[2]

4. PLEADING—ALLEGATION OF DAMAGES—AMENDMENT.

A declaration in an action by an administrator for the death of his intestate from defendant's negligence may be amended so as to show that the next of kin have sustained damages by reason of the death.   *Walker* v. *Railway Co.,* 104 Mich. 617, followed.

[1] Rehearing denied June 18, 1897.

[2] The decisions respecting injuries by street-car collisions with vehicles are collected in a note to *Hicks* v. *Citizens' R. Co.,* (Mo ) 25 L. R. A. 508.

Error to Wayne; Lillibridge, J. Submitted January 6, 1897. Decided April 27, 1897.

Case by John Garrity, administrator of the estate of Hugh Garrity, deceased, against the Detroit Citizens' Street Railway Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*T. A. E. & J. C. Weadock*, for appellant.

*Brennan, Donnelly & Van De Mark* and *A. C. Angell*, for appellee.

Hooker, J. The plaintiff's intestate was killed, while driving to a fire upon a truck of the Detroit fire department, in a collision with a street car at a crossing of streets. The circuit judge directed a verdict for the defendant, upon the ground of contributory negligence, it appearing that deceased, while driving three horses before a truck 69 feet long, came to the point where Montcalm street (upon which he was driving) intersected Woodward avenue, without having his horses under control, so that he could stop them in time to prevent a collision with an electric street car, should one be so near as to get in his way. The undisputed evidence shows that the car was heavily loaded, and was approaching upon a down grade, at a distance shown by different witnesses to be from 30 to 150 feet or more from the place of the accident. The two car tracks upon Woodward avenue were near the center, and the track upon which this car ran was about 50 feet from the street line, and it seems not to have been visible or noticed until the driver (who must have sat 14 or 15 feet back of the end of the truck pole) passed the street line. At this time the horses were going at the rate of 8 miles an hour, and were within 35 feet of the track; and, as it was conclusively shown that it would require 100 feet in which to stop the truck, it is plain that the

driver, when he discovered the car, had no alternative but to cross the track in front of the car.   When the horses were on the track (which was probably as soon as he could do so after seeing the car), he drew his whip, and urged the horses, increasing their speed.   The car, which weighed seven tons exclusive of passengers, was caught by the rear wheel of the truck, and turned around so that it stood across the track.   The wheel of the truck was broken, and the driver was killed.

Error is assigned upon the charge, counsel for the plaintiff claiming that the case should have been submitted to the jury.   It is contended that the truck had the right of way, under the city charter which authorizes it, and makes it a misdemeanor for any one to obstruct its passage, and that it was the duty of the motormen to stop their cars, and give the fire apparatus the opportunity of crossing without delay, and that it was unnecessary for the driver to have his team under control at street crossings, so as to be able to stop if necessary to avoid a collision with a car.   It is manifest that a fire truck approaching a street upon which is a street railway is liable to find cars in any degree of proximity to its pathway, either with or without fault of the motorman, so close, indeed, that to stop may be impossible.   A collision involves danger to life and limb, to those upon the car, as well as to those upon the truck; and, while the exigency of a fire may well require dispatch, it is not so essential as to justify taking unnecessary chances of collision dangerous to life.   Furthermore, collisions do not conduce to dispatch, but cause delay, and the public service is advanced by avoiding them.   So, we think that both the preservation of life and expedition in getting to the fire require caution in approaching streets where cars are likely to be encountered.   As an abstract proposition, then, we think that to approach a street-car line, which must be crossed, without having the horses under such control as to permit of stopping, is negligence; and the proof shows that the driver was culpably negligent in approaching this street.

Had the car been a little nearer, or responded less quickly to the efforts to stop it; the pole of the truck would have crashed into it, and the consequences of such an accident are frightful to contemplate.

Counsel cite several cases in support of this proposition, among them the following: *Carson* v. *Railway Co.*, 147 Pa. St. 219 (15 L. R. A. 257); *McGee* v. *Railway Co.*, 102 Mich. 107; *Fritz* v. *Railway Co.*, 105 Mich. 50; *Greenwood* v. *Railroad Co.*, 124 Pa. St. 572 (3 L. R. A. 44). This last-mentioned case applied the doctrine of contributory negligence to one who, going to a fire, drove a hose cart at a rapid rate across a railroad, although the gates were up. See, also, *People* v. *Little*, 86 Mich. 125. The language of Chief Justice CHAMPLIN is apropos to this case, upon the contention that having the right of way by ordinance justified the intestate in not having his team under control when approaching the street crossing. If we can say that his negligence actually contributed to the accident, it must follow that we should approve the course taken by the trial judge, and affirm the judgment. This involves the question whether or not the car was so close to the intersection of the streets as to render an attempt to cross in front of it imprudent; for, manifestly, if the car was so far off as to justify the ordinarily prudent man in driving such a vehicle as this truck across in front of the approaching car, such act would not be made negligent by reason of an act which, though negligent in the abstract, was not negligent in relation to the particular car which was approaching. In other words, if it was not negligent to cross the track in front of the car, the driver cannot be said to be guilty of contributory negligence because (owing to his rapid approach) he had no alternative after discovering the car. But, on the other hand, we should perhaps emphasize the converse of this proposition, viz., that, if it is negligent to cross in front of a car as near as this one was, the driver cannot be relieved from the consequences of his attempt, by reason of the fact that he found himself in a position where

he was compelled to cross, inasmuch as it was his own negligence that placed him there. If it were due to the negligence of the defendant that he was placed in jeopardy, he might not be required to exercise the best judgment in his effort to extricate himself. We are of the opinion that it should not be said that the evidence conclusively shows that it was imprudent—*i. e.*, negligent—to drive this truck across the track.

· While we do not wish to be understood as casting doubt upon the rule that one who intends to cross a street-car track should use his eyes and ears to ascertain whether it is safe to attempt it, especially in view of modern methods and increased speed of cars, yet we think that street railroads are not governed by the same rules in all respects that are applied to steam roads. Street cars are used in the common highway, and the part occupied by the track is put to a common use. In crowded thoroughfares, like Woodward avenue of Detroit, the ordinary vehicles and footmen are constantly crossing and recrossing these tracks between cars; and recognizing, as we do, the propriety and necessity of prudence, care, and caution in doing so, we must also admit that it is common practice for people to drive or walk upon tracks, relying to some extent upon the watchfulness and prudence of the motorman, and his ability to stop his car within a reasonable distance. In the case of steam roads it is expected that people will not rely on a reduction of speed under ordinary circumstances. Such cars are run upon private ground, as contradistinguished from a public highway, upon a roadway devoted to its exclusive, and not to a common, use. Again, the rate of speed, the weight of trains, and consequent momentum, are much greater on steam roads. All of these things go to show that an act that is clearly negligent where a steam road is involved may not be negligent in the case of street cars. The degree of care depends upon the nature of the danger. Cable and electric cars may require greater care and caution than

horse cars, and rapid transit may make dangerous an act which reduced speed might justify. There are cases where we are able to say from the undisputed testimony that negligence or contributory negligence is conclusively shown; but in a case like this, where there is testimony indicating that the car was at a distance within which a jury might legitimately find that it could have been stopped, and that the driver of the truck might, without being called imprudent, drive across, in the expectation that it would be stopped in view of his having the right of way, we cannot say that the case should have been taken from the jury. We do not lose sight of the many facts that may justify a belief that the car was too near to be stopped in time to avoid a collision, and that the driver could not prudently drive upon the track; and, were we to pass upon the weight of evidence, we might so decide. But these facts are disputed. We cannot say that the car was nearer than 150 feet, or that it could not have been readily stopped in time to avoid the collision; nor can we say that a driver could not prudently drive upon the track with this truck, under the circumstances.

Counsel for defendant call attention to the fact that neither the declaration nor the proof shows that Elizabeth Garrity or any other person suffered damage by reason of Hugh Garrity's death. If the declaration was defective in this regard, it should be amended, under the decision in the case of *Walker* v. *Railway Co.*, 104 Mich. 617. We do not feel justified in saying that the testimony upon this subject shows that she suffered no damage, and therefore cannot affirm the judgment.

The judgment is reversed, and a new trial ordered.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred with HOOKER, J.

GRANT, J. (*dissenting*). I think the learned circuit judge, in directing a verdict for the defendant, gave con-

clusive reasons for so doing.  He held that the deceased
was guilty of contributory negligence.  The undisputed
facts are these: The deceased was driving, a vehicle 62
feet 7 inches long, weighing 7 tons, and drawn by three
horses.  He drove out of a narrow side street, at the rate of
8 miles an hour, at which speed he could not stop his vehi-
cle within 100 feet, or not until it had crossed the entire
distance of Woodward avenue, which is 90 feet wide.
High buildings were constructed at the corner close to the
street line, and prevented the driver from seeing any
distance up the avenue until he was almost on a line with
it.  His team could not be stopped until it was across
Woodward avenue, and the only course left him was
to lash his team into as great speed as possible, which he
evidently did.  It is also evident that at the same time
the motorman applied his brake with all the rapidity and
force possible, and did it so quickly that some of the pas-
sengers were almost thrown over, and all instantly recog-
nized the fact that something unusual had happened.
He had brought his car almost to a standstill when the
hind wheel of the truck caught it, and threw it at
right angles across the track.  The circuit judge cor-
rectly held that the charter giving fire vehicles precedence
over other vehicles does not give them absolute preference,
and the right to drive them without regard to consequences
onto a crowded thoroughfare.  The rights and lives of
people traveling on street cars and in other vehicles are as
much entitled to protection as is property which is in
danger of being destroyed by fire.  In approaching this
crowded thoroughfare, it was the clear duty of those
having charge of the truck to have it under control.
Confessedly, they did not do so, but drove the ponderous
vehicle out of a narrow street onto the crowded one at
such a rate that they could not control it for 100 feet.
Under this state of facts, is there any reason in permit-
ting a jury to find that the motorman might have acted
with greater celerity than he did to stop his car, and thus
possibly have avoided the collision?  Scarcely any per-

ceptible time elapsed after the horses reached the line of Woodward avenue before the collision. The street car was running at a lawful rate of speed, and the motorman, upon seeing danger, was only required to do all in his power to stop the car. There is nothing in the record to indicate that he did not do so, except the estimates of the witnesses as to the distance of the car from the place of collision when the truck emerged from the side street. These vary nearly 100 feet. They are, at best, mere guesses, and are of little value in determining the fact.

Let it be granted, however, that the motorman did not act instantly, and that this was negligence. Is it not apparent that the driver of the truck was driving recklessly? · If there is evidence to show that both were negligent, why should the plaintiff be allowed to recover? Or why should the motorman, if injured, be entitled to recover against the city or the fire department? This would establish the doctrine of comparative negligence, which has been uniformly repudiated by this court. I know of no better case than the present to illustrate the justice of the rule that he who contributes to his own injury cannot recover. I think the same principle which governs and controls this case is found in the following decisions: *McGee* v. *Railway Co.*, 102 Mich. 107; *Fritz* v. *Railway Co.*, 105 Mich. 50; *People* v. *Little*, 86 Mich. 125; *Carson* v. *Railway Co.*, 147 Pa. St. 219.

I am for the affirmance of the judgment.