[L. A. Nos. 6563, 6564, 6565. In Bank.—November 7, 1921.]

O. B. BALTHASAR et al., Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

[1] MOTOR VEHICLE ACT — SPEED LIMITS — TURNING OF CORNERS — RULES INAPPLICABLE TO FIRE APPARATUS.—The general restrictions as to speed and turning of corners applicable to vehicular traffic contained in the Motor Vehicle Act (Stats. 1917, p. 382), do not apply to a fire apparatus responding to an alarm, in view of the fundamental rule of construction that a statute is not applicable to the government or its agencies unless expressly included by name.

[2] ID.—RIGHT OF WAY OF FIRE APPARATUS—CONSTRUCTION OF ACT.— The provision of section 20 (m) of the Motor Vehicle Act that fire apparatus while being operated as such shall have right of way with due regard to the safety of the public has reference to the person required to yield such right of way, and notice to him is essential and a reasonable opportunity to stop or otherwise yield the right of way, necessary in order to charge him with the obligation to give precedence to the fire apparatus.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Karr and R. C. Gortner for Appellant.

James H. Howard, Rhodes & Howard and F. C. Dunham for Respondents.

WILBUR, J.—On the eighth day of February, 1919, a collision occurred between a motor-truck belonging to the fire department of the city of Pasadena responding to a fire-alarm from North Fair Oaks Avenue and an electric railway train operated by the defendant corporation.

2. Care required of driver of street-car or other vehicle to avoid collision with fire apparatus, notes, Ann. Cas. 1918A, 290; 19 L. R. A. (N. S.) 623; L. R. A. 1917E, 415; of fire apparatus to avoid collision with street-car or other vehicle in street, note, Ann. Cas. 1913E, 231.

The motor-truck was moving east on Bellefontaine Street, which terminated in Fair Oaks Avenue, and turned north on Fair Oaks Avenue without passing to the south of the intersection of the medial lines of Bellefontaine and Fair Oaks Avenue, colliding with a south-bound train of the defendant before the turn was completed. Charles Carlson and O. B. Balthasar were riding on the rear running-board of the motor-truck. The former was killed and the latter injured as a result of the collision. The city of Pasadena having paid an award made by the Industrial Accident Commission for the injuries of Balthasar and the death of Carlson, brought suits on behalf of Balthasar and the widow of Carlson to recover the damages sustained by them, respectively, and on its own behalf to recover damages sustained by reason of the injury to the motor-truck. These three cases were consolidated for trial, and verdicts were rendered in favor of the plaintiffs in each case. The defendant Railway Company appeals from the judgment upon said verdicts. It is conceded by the appellant that the evidence is sufficient to sustain the jury's verdict holding the defendant company negligent in the operation of its cars at an excessive speed, but contends that the plaintiffs were guilty of contributory negligence and that the court erroneously instructed the jury on that subject. These contentions require consideration of the meaning and effect of the ordinance of the city of Pasadena relating to the right of way for fire apparatus responding to a fire-call and to the provisions of the state Motor Vehicle Act upon that subject. Appellant claims that the driver of the motor vehicle violated the law in two respects, first, in cutting a corner in violation of section 20 (g) of the Motor Vehicle Act (Stats. 1917, p. 382), and, second, in driving at a speed in excess of fifteen miles per hour in approaching Fair Oaks Avenue, and in approaching the railroad tracks of the defendant company, in violation, it is claimed, of section 22 (a) of the Motor Vehicle Act of 1917 (Stats. 1917, pp. 382, 404, *supra*). The provisions of the statute relied upon by the appellant are as follows:

"Section 20 (g): All vehicles approaching an intersection of a public highway, with the intention of turning thereat, ... in turning to the left shall run beyond the center of such intersection, passing to the right thereof, before turning such vehicle toward the left. For the purposes of this

subdivision the 'center of such intersection' shall be held to mean the meeting point of the medial lines of the two highways traversed by the vehicle making the turn."

"Section 20 (m): Police patrol wagons, police ambulances, fire patrols, fire engines and fire apparatus in all cases while being operated as such, shall have right of way with due regard to the safety of the public; but this provision shall not protect the driver or operator of any such vehicle or his employer or principal from the consequence of the arbitrary exercise of this right or for injuries willfully inflicted."

"Section 22 (a): . . . provided, further, that no person shall operate or drive a motor vehicle or other vehicle on any public highway at a greater rate of speed than fifteen miles an hour in approaching any steam, electric or other railway crossing at grade, or in approaching or traversing an intersecting highway, or crossing or intersection of highways, or in approaching or going around corners or curves in the highway, when in any of the foregoing cases the operator's or chauffeur's view of the road or railway traffic is obstructed, but anything to the contrary herein notwithstanding, no person shall operate or drive a motor vehicle or other vehicle on any public highway at a greater rate of speed than fifteen miles an hour in traversing any steam, electric or other railway crossing at grade; . . . "

The provisions of the ordinance (No. 1346) of the city of Pasadena involved in a consideration of the questions herein are as follows:

"Section 32. The officers and firemen of the fire department and their apparatus of all kinds, when going to or on duty at, or returning from a fire, and all ambulances, whether of public or private character, and all other vehicles, when employed in carrying sick or injured persons to hospitals or other places for relief or treatment, and the officers and policemen and vehicles of the police department shall have the right of way over all other persons and vehicles on any street, and through any procession, except over vehicles carrying the United States mail."

"Section 33: It shall be unlawful for the driver of any vehicle or the motorman of any street car in or upon any street in the city of Pasadena, or for any person standing or walking in any such street, to fail, refuse or neglect to

allow the right of way to any officer or fireman, or apparatus of the fire department, when the same is going to or on duty at, or returning from a fire, or to any ambulance, whether of public or private character, or to any other vehicle, when such vehicle is employed in carrying a sick or injured person to a hospital or other place for relief or treatment.''

"Section 34: Upon the approach of any apparatus of the fire department or any police patrol wagon, or any ambulance, the driver of any vehicle or street car, in or upon any street shall immediately stop such vehicle as near as possible to the right-hand curb of such street, and it shall be unlawful for any such driver to cause or permit such vehicle to be moved until such apparatus, police patrol wagon or ambulance shall have passed such vehicle."

The first question for consideration is whether the general restrictions as to speed and turning of corners, applicable to vehicular traffic contained in the Motor Vehicle Act, apply to fire apparatus responding to a fire-alarm. Such apparatus is operated by the municipality in the exercise of its governmental functions.

It must be conceded that the language of the Motor Vehicle Act in fixing speed limits, and regulating the use of public streets, is broad enough to apply to a motor fire-truck responding to a fire-alarm. But a familiar and fundamental rule of construction requires that this general language shall not be construed to apply to the government or its agencies unless expressly included by name. The general rule is stated by Blackstone as follows: "I shall only further remark, that the King is not bound by any act of parliament unless he be named therein by special and particular words. The most general words that can be devised (any person or persons, bodies politic or corporate, etc.) affect him not in the least, if they may tend to restrain or diminish any of his rights or interests." (Blackstone's Commentaries, Book 1, p. 261.)

Chancellor Kent states the rule as follows: "It is likewise a general rule, in the interpretation of statutes limiting rights and interests, not to construe them to embrace the sovereign power or government, unless the same be expressly named therein, or intended by necessary implication." (Kent's Commentaries, p. 460.)

187 Cal.—20

Associate Justice Story of the supreme court of the United States, sitting in the first circuit in the case of *United States* v. *Samuel Hoar*, 2 Mason, 311, [Fed. Cas. No. 15,373], stated the rule as follows:

"Now, I think, it may be laid down as a safe proposition, that no statute of limitations has been held to apply to actions brought by the Crown, unless there has been an express provision including it. For it is said, that, where a statute is general, and thereby any prerogative, right, title, or interest is divested or taken from the king, in such case the king shall not be bound, unless the statute is made by express words to extend to him. . . . And though this is sometimes called a prerogative right, it is in fact nothing more than a reservation or exception, introduced for the public benefit, and equally applicable to all governments. . . .

"But, independently of any doctrine founded on the notion of prerogative, the same construction of statutes of this sort ought to prevail, founded upon the legislative intention. Where the government is not expressly or by necessary implication included, it ought to be clear from the nature of the mischiefs to be redressed, or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put such an interpretation upon any statute. In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary force to the government itself. It appears to me, therefore, to be a safe rule founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act. . . . "

This rule has been frequently applied in this state. Most recently in the case of *Irillary* v. *City of San Diego*, 186 Cal. 535, [199 Pac. 1041], wherein it is held that a debt due from a municipality cannot be garnisheed in a suit by a private party, even though the debt was incurred by the city acting in its proprietary capacity; and in *Engebretson* v. *City of San Diego*, 185 Cal. 475, [197 Pac. 651], following *San Francisco etc.* v. *City and County of San Francisco*, 131 Cal. 356, [63 Pac. 665], holding that general provisions in regard to interest do not apply to municipalities, and in

*Slayden* v. *O'Dea,* 182 Cal. 500, 505, [189 Pac. 1066]. In *Berton* v. *All Persons,* 176 Cal. 610, 616, 617, [170 Pac. 151], it was held that the general language of the McEnerney Act does not apply to a city, although a judgment in such a case is expressly made "binding on the whole world." The language of that case is so appropriate to the discussion that we quote the following therefrom:

"It is apparent, therefore, that the binding and conclusive force of the earlier judgment as against the city and county of San Francisco must come, if it exists at all, from the fact that a judgment under the McEnerney Act, valid on its face, is a judgment *in rem* and so 'binding on the whole world,' unless and until set aside under familiar equitable principles.

"That the judgment here offered is valid upon its face cannot be disputed. As little may it be questioned but that such a judgment is conclusive upon all private rights and so is conclusive against all the rights of private persons, individuals, associations, and corporations whether in the judgment named or unnamed. Thus beyond question this previous judgment was binding upon all the private litigants in the present action.

"It is to be considered, however, what may be its binding force and effect upon the state itself and upon the state's public agencies and mandatories such as for some purposes municipal corporations always are. In brief, our inquiry is, What was the effect of this previous judgment upon the city and county of San Francisco present and objecting to its introduction as an estoppel against its own claim? Law is a rule of conduct dictated by the superior, the state, for the conduct and control of its people. It is only by its own grace that the state ever becomes subject to the operation of its own laws, and while in later governmental development the state frequently makes declaration that it will submit its own rights to determination in its own or other courts, yet, as such declarations are always in the nature of impairments of the sovereign power, this submission of the state is never inferred in favor of the private litigant, but must be found either actually expressed in an act or by fair intendment and interpretation to belong in the act. It is unnecessary to cite illustrations of this. They are too familiar. Suffice it to refer to the fact that title by adverse pos-

session as against the state can only be secured under such permissive law. The mechanic's lien law of universality in its operation does not apply to the land and buildings of the state.

"A reading of the McEnerney Act discloses not only a failure by the state to declare itself bound by decrees so obtained, but makes manifest that the statute was dealing only with the private rights of private persons. Giving to 'persons' its broad and indubitable meaning, the statute was dealing with the private rights of individuals, associations, copartnerships, and corporations other than public agencies acting in their public capacity. A sovereign state is not a person.''

Indeed, the rule has been so frequently applied in this state that we refrain from further comment on the cases, reference to which we now make. (*Whittaker* v. *County of Tuolumne,* 96 Cal. 100, [30 Pac. 1016]; *Reclamation Dist. No. 551* v. *County of Sacramento,* 134 Cal. 477, 480, [66 Pac. 668]; *Ruperich* v. *Baehr,* 142 Cal. 190, 192, [75 Pac. 782]; *People* v. *San Joaquin Valley etc. Assn.,* 151 Cal. 797, 806, [91 Pac. 740], and cases cited therein: *People* v. *California Fish Co.,* 166 Cal. 576, 592, [138 Pac. 79]; *Westinghouse Electric Co.* v. *Chambers,* 169 Cal. 131, 139, [145 Pac. 1025].) This rule applicable to the interpretation of statutes is broad enough to cover municipal employees. As was aptly said in *Ruperich* v. *Baehr, supra,* concerning the garnishment of salaries of employees: "The state and its subordinate bodies perform their governmental functions through their officers and employees elected or appointed for that purpose. Therefore, any process of law which would tend to embarrass such officers or employees while in office, and hinder or distract them in the discharge of official duty, would injuriously affect the capacity of the state to perform its functions as much as, if not more than, the annoyance of having its funds subjected to garnishee process.''

[1] It follows that the general rules of the road relating to speed and to the turning of corners contained in the Motor Vehicle Act do not apply to fire or police apparatus. We have only to consider the utter absurdity of requiring peace officers to observe the arbitrary speed limits fixed by the Motor Vehicle Act when pursuing criminals, who may be fleeing in high-power cars at twice the legal limit, to

make manifest that the legislature did not have in view such a limitation on peace officers. And it is equally clear that they did not contemplate retarding the speed of fire apparatus in going to a fire.

The court of appeals of New York, in *Farley* v. *Mayor etc.*, 152 N. Y. 222, [57 Am. St. Rep. 511, 46 N. E. 506], held that the general language of section 1932 of the Consolidation Act (Laws 1882, c. 410, p. 470), prohibiting "any person" from driving any horse through any street "within the city of New York with greater speed than at the rate of five miles per hour," did not apply to fire apparatus going to a fire. The court merely observed that "It is manifest that section 1932 of the Consolidation Act can have no application to the speed at which engines or hose-carts connected with the fire department shall be driven when going to a fire. . . . Sec. 1932 was intended to regulate the speed of horses traveling on the streets and using them for ordinary purposes of travel, and from the nature of the exigency cannot apply to the speed of vehicles or the fire department on the way to fires." (See, also, *Oklahoma Ry. Co.* v. *Thomas*, 63 Okl. 219, [L. R. A. 1917E, 405, 164 Pac. 120].)

In some cases it has been held that either an implied exception must be read into local ordinances regulating speed in favor of the fire department or that the ordinance must be declared to that extent unreasonable and void. (*State* v. *Sheppard*, 64 Minn. 287, [36 L. R. A. 305, 67 N. W. 62]; *City of Kansas City* v. *McDonald*, 60 Kan. 481, [45 L. R. A. 429, 57 Pac. 123].) For the reasons above stated it is clear that the exception is implied, and that it is unnecessary to rely upon the doctrine that unreasonable ordinances are void, and that these cases in so far as they so hold support our conclusion as to the proper construction of our Motor Vehicle Act.

There is nothing in the cases cited by appellant opposed to our view as to the proper construction of our statute, These cases are *People* v. *Little*, 86 Mich. 125, [48 N. W. 693], a case involving the right of way of a private ambulance; *Knox* v. *North Jersey St. Ry. Co.*, 70 N. J. L. 347, [1 Ann. Cas. 164, 57 Atl. 423], involving the application of the common law to a collision with fire apparatus; *Woods* v. *Public Service Co.*, 84 N. J. L. 171, [85 Atl. 1016], involving the effect of a statute giving a right of way to fire

apparatus; *Morse* v. *Sweenie,* 15 Ill. App. 486, involving the construction of an ordinance expressly applying to fire apparatus; *Greenwood* v. *Philadelphia W. & Balt. R. R. Co.,* 124 Pa. 572, [10 Am. St. Rep. 614, 3 L. R. A. 44, 17 Atl. 188], involving a collision between a railway train at a railroad crossing and a fire engine; *Garrity* v. *Detroit Citizens' St. Ry. Co.,* 112 Mich. 369, [37 L. R. A. 529, 70 N. W. 1018], involving a consideration of the duty of a driver of a fire truck having the right of way by ordinance in approaching and crossing a street-car track; and *Birmingham Ry. & Elec. Co.* v. *Baker,* 126 Ala. 135, [28 South. 87], to the same effect; also, *Indianapolis T. & T. Co.* v. *Hensley* (Ind.), 105 N. E. 474, and *Coles* v. *New Orleans Ry. & Lt. Co.,* 133 La. 915, [63 South. 401], relating to right of way at crossings of street-cars and street intersections.

Having concluded that the speed limit and rules as to turning at corners do not apply to fire apparatus responding to an alarm, the next question is as to the effect of the statute and ordinance granting a right of way. It is evident that these provisions, under our view, are inserted to direct and control the operators of other vehicles upon the highway. At common law it is said no right of way was granted to fire apparatus. (*Knox* v. *North Jersey St. Ry. Co.,* 70 N. J. L. 347, [1 Ann. Cas. 164, 57 Atl. 423]), hence the necessity of statutory rules requiring the yielding of such right of way and such provisions are to be construed in the light of this situation.

Before further considering this subject it should be stated that the trial court instructed the jury that the driver of the fire truck was required to exercise reasonable care. The instructions on this subject are quite as favorable as the defendant was entitled to. Instructions 23, 24, 25, and 29 were given at the request of the defendant, as follows:

"23. Due regard to the safety of the public, required of those operating a fire truck on the public streets, means the exercise of reasonable care by them for the public safety. If the truck be driven at a higher speed than is lawful, or in a manner that is unusual to vehicles, such as cutting the corner, or on the left-hand side of the street, such unusual conduct must be accompanied by a commensurate degree of care on the part of those engaged in propelling the truck so that at all times due regard may be had to the public

safety. If unusual or extraordinary care is thus reasonably necessary, it must be given; and the omission thereof will constitute negligence.''

"24. The law requires that any person operating or driving a motor vehicle (and this includes a fire truck) on the public highways, shall operate or drive same in a careful and prudent manner, and at a rate of speed not greater than is reasonable and proper, having regard to the traffic and use of the highway, and that no person shall operate or drive such motor vehicle on a public highway at such rate of speed as to endanger the life or limb of any person, or the safety of any property. A violation of this law would constitute negligence.''

"25. No right of way exists in case of fire patrols, fire engines or fire apparatus while being operated as such, which is superior to due regard for the safety of the public; their right of way in operation on public streets must be exercised with due regard to the public safety. This means as much the safety of that portion of the public in street-cars or electric cars as that portion of the public otherwise lawfully on or using the streets.''

"29. Defendant's motorman, in operating its car, was required to use only the care and caution which an ordinarily prudent and careful man would have exercised under similar circumstances, and if you find from the evidence that said motorman used such care and caution, then you cannot find defendant railway company negligent in respect to anything done by the said motorman.''

These instructions certainly made the plaintiffs' right of way dependent upon a *"due regard to the safety of the public."*

[2] It is evident that the right of way of fire apparatus over other vehicles is dependent upon "due regard to the safety of the public" only in so far as such "due regard" affects the person required to yield the right of way. Notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way necessary in order to charge a person with the obligation fixed by law to give precedence to the fire apparatus. This seems to have been the view of the trial court, for it instructed the jury as follows:

"5. If you believe from the evidence that the motorman of defendant's car failed, refused and neglected to allow the right of way to apparatus of the fire department of the city of Pasadena, when said fire apparatus was going to a fire, *and that such motorman knew, or in the exercise of ordinary prudence should have known, of the approach of such fire apparatus,* in time to have allowed said right of way, and that by reason of such failure, refusal, and neglect to allow said right of way and as a proximate result thereof one of the plaintiffs was struck, injured or killed or suffered property damage without negligence on his or its part contributing to such injury, death, or damage, then you will find for that plaintiff." (Italics ours.)

The appellant complains that its instruction No. 35, defining the ordinary care required of the occupants of the fire truck, was modified by the court by adding the portion in italics as follows: "under all the circumstances of the case including the circumstances above mentioned and including also the circumstance that they were entitled by law to the right of way."

Appellant's point is that the right of way is contingent upon the exercise of due care on the part of the driver of the fire truck. This instruction, as modified, taken in connection with instruction 25, above quoted, is as favorable as defendant was entitled to.

It should be stated that no question is raised in the briefs as to the relative authority of the state and city over the control of fire apparatus in the public streets of a chartered city (*Ex parte Daniels,* 183 Cal. 636, [192 Pac. 442]), and hence we have not discussed that question.

Appellant, in its reply brief, calls attention to the amendment of the Motor Vehicle Act by the legislature of 1919 (Stats. 1919, p. 218), whereby the legislature declares that the right of way therein accorded "shall not be construed as permitting the violation by the operators of any such vehicles of any of the provisions of section twenty-two of this act," etc., and suggests that this points to the proper construction of the law in force in 1917. We cannot agree with this contention.

Under this view of the law and the facts, it is unnecessary to discuss appellant's points, based upon the claim that the

defense of contributory negligence is available against the city, even if not so available against the injured persons.

Judgment affirmed.

Sloane, J., Lennon, J., Lawlor, J., Shaw, J., and Shurtleff, J., concurred.